IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ELIZABETH FAYE ADCOCK**                                             PLAINTIFF

VS.                            No. 4:22-cv-01210 PSH

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                                  DEFENDANT

### ORDER

Plaintiff Elizabeth Faye Adcock ("Adcock"), appeals the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disability Insurance benefits ("DIB"). Adcock contends the Administrative Law Judge ("ALJ") erred in two ways: (1) by failing to fully account for her migraine headaches, both at step 3 and when assessing her residual functional capacity ("RFC"); and (2) by failing to properly assess her credibility. Kijakazi correctly observes that the "crux of both issues is whether substantial evidence supports the ALJ's evaluation of Plaintiff's migraine headache impairment." (Doc. No. 9, page 1.) The parties have ably summarized the testimony given at the telephonic administrative hearing conducted on June 21, 2022.[1] (Tr. 932-962). The

---

[1] The June 2022 administrative hearing was the second hearing in the case. After the initial

Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from April 20, 2018, the alleged onset date, through September 28, 2022, the date of the ALJ's decision. The Court finds merit in Adcock's first claim for relief, and therefore remands this case for further consideration.

*The Administrative Hearing:*

Adcock, who was 59 at the time of the hearing, responded first to questions posed by the ALJ. She stated she was 5'8", weighed 160, had a high school education, had taken one college course, and lived with her husband. She was not working, but assisted in collecting rent for apartments owned by her family. This task took only 15 minutes a month. Adcock stated she last worked in April 2018, retiring due to neck pain and migraines. She was employed in various capacities by the same employer, Eaton Hydraulics, from 2006-2018. The jobs, according to Adcock, required her to be on her feet for most the day, and required substantial lifting and carrying.

---

hearing and decision finding her not disabled, Adcock sought judicial review. At the request of the government, the case was remanded for further action. In the meantime, Adcock had filed a new claim in April 2021. Adcock's two claims were consolidated by the Appeals Council. (Tr. 1013).

Adcock described treatment for her neck pain[2] and migraine headaches. For the migraines, Adcock explained she took both abortive and preventative medications. She had "been on several" medications, and her latest preventative was Emgality, administered via a monthly injection. (Tr. 943). She also was administered two sets of Botox injections, Phenergran, and an abortive medication, Ubrelvy, which "seems to work well." (Tr. 944). Adcock took Ubrelvy for 4-5 months. Although it had benefits, she was limited to taking it for only 8 days in a month, she could take only 2 pills a day, waiting for 2 hours after taking the initial pill before taking the second, and it caused sleepiness and fatigue. She stated that Ubrelvy "decreases the pain and usually takes it away completely, but it usually takes about four hours." (Tr. 947). Adcock explained she had previous good results with Rizatriptan but it was only temporarily effective ("seemed to quit working after a while") and produced side effects including 3-4 hours of being incapacitated and severe constipation. (Tr. 946). She also got some relief from Aimovig, which also caused constipation and became ineffective over time. The two Botox treatments provided relief for about a week, according to Adcock. At the time of the hearing, Adcock was trying Emgality as a

---

[2] Neck pain treatment included epidural injections, physical therapy, daily TENS unit treatment, daily traction, and weekly chiropractic care. Adcock reported side effects, such as dizziness and sleepiness, from medications for the neck pain such as Baclofen, Toradol (shots and pills), and Hydrocodone.

preventative treatment for the headaches.

Adcock listed numerous events triggering her migraines, including bright sunlight, bright lights, sun glare, strobing or flashing lights, loud music, loud noises, perfumes, harsh chemical odors, lifting or holding her 13-month old granddaughter, neck pain occurring when she writes, lifts, or reaches, driving for long periods, computer work, and certain household chores.

In response to further questions from her attorney, Adcock indicated her headaches typically lasted 4-12 hours and she was currently having about 8 headaches a month, with medication. She responded to the headaches by lying down in a quiet, dark room, with a cool cloth on her head. When experiencing the worst of the headaches Adcock stated she could not concentrate, perform tasks, do chores, or be around people. She testified to having a "moderate" headache at the hearing. (Tr. 950).

Adcock estimated she could drive up to 10 miles, wash dishes, make her bed, wash clothes, but needed help from family members with mopping, sweeping, vacuuming, and yardwork. She said she no longer went to church, restaurants, or ballgames, and no longer cooked. She stated her grandchildren visited her when she did not have a migraine, and that she enjoyed watching videos of them.

The ALJ concluded by asking if Adcock was able to exercise, as directed by

one of her doctors. Adcock stated she attempted to exercise but was unable to do so, and the attempt worsened the headaches.

Rachel Renee Hawkins ("Hawkins"), a vocational expert, testified, assessing Adcock' past work as a bench assembler, data entry clerk, and engraver 1. Hawkins rated the engraver 1 position as light, skilled work, but performed by Adcock at the medium exertional level. The ALJ posed a series of hypothetical questions to Hawkins, first asking her to consider a hypothetical worker of Adcock's age, education, and experience, who could perform light work but who must avoid concentrated exposure to excessive vibration, and who would be limited to frequent overhead bilateral reaching. Hawkins responded that such a worker could perform the past relevant job of engraver 1. The ALJ then altered the hypothetical, adding the limitations of avoiding exposure to bright lighting, including sunlight, very loud noises, and irritants such as fumes, odors, dust, gases, and poorly ventilated areas. Hawkins stated such a worker could perform the engraver 1 job. If the hypothetical were to include the worker missing 4 days per month Hawkins opined that no jobs would be available. Adcock's attorney inquired about the limits of absenteeism, and Hawkins opined that most employers would tolerate less than one day a month. Hawkins also opined that employers of unskilled workers would typically permit less than 5% of the workday to be off-task time. Hawkins also acknowledged no jobs

would be available if the hypothetical worker required the lights to be dimmed, or if headaches resulted in being off-task more than 10% of the workday.

*ALJ's Decision:*

In his August 23, 2022, decision, the ALJ determined Adcock had the severe impairments of migraines, occipital neuralgia, cervicalgia, and cervical degenerative disc disease with spondylosis. The ALJ also found Adcock had the following non-severe impairments: low back degenerative disc disease, pinched nerve, Chiari malformation, bilateral carpal tunnel, bilateral tinnitus, and abdominal pain/pancreatic sphincter of Oddi dysfunction/excessive bile production. The ALJ also listed other impairments which were non-severe and were not alleged to be disabling by Adcock, including hyperlipidemia, cataracts, vitamin D deficiency, vitamin B12 deficiency, gastritis, GERD, dysphagia, osteopenia, and mitral valve prolapse.

The ALJ found Adcock' mental impairments of depression and anxiety did not, either singly or in combination, cause more than minimal limitation in her ability to perform basic mental work activities. In reaching this conclusion, the ALJ considered the four broad areas of functioning found in 20 C.F.R., Part 404, Subpart P, Appendix 1, finding Adcock had a mild limitation in three of the four functional areas: (1) concentrating, persisting, or maintaining pace ; (2) adapting or managing oneself; and (3) interacting with others. The ALJ found Adcock had no limitation in

understanding, remembering or applying information.

The ALJ found Adcock did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically addressed Listings 1.15 and 1.16 (spinal impairment). The ALJ also evaluated whether a primary migraine disorder was equal in severity and duration to the criteria in 11.02B and 11.02D.

The ALJ assessed Adcock to have the RFC to perform light work with the restrictions which mirrored those detailed in the first two hypothetical questions posed to Hawkins.[3] The ALJ assessed Adcock's subjective allegations, finding her statements "not entirely consistent with the medical evidence." (Tr. 910).

The ALJ summarized the testimony of Adcock at her first hearing, in May 2020, where she testified to about 22 headaches a month, treated with medications. The ALJ also reviewed the testimony from the June 2022 hearing, as well as Adcock's written submissions. The ALJ thoroughly reviewed the medical evidence, discussing her treatment beginning in May 2017, about a year before the alleged onset date of

---

[3] That is, Adcock could perform light work except she can frequently reach overhead bilaterally; she must avoid concentrated exposure to bright lighting, including sunlight; she must avoid concentrated exposure to very loud noises defined as jack hammering, chain sawing, and rock concert levels; she must avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; and she must avoid concentrated exposure to excessive vibration.

April 2018. The ALJ summarized more than forty visits Adcock made to various providers between May 2017 and May 2022.

> With regard to Adcock's migraines, the ALJ concluded:
>
> . . . [t]he claimant certainly has numerous headaches per month, as evidenced by her headache logs, noted above. However, she has noted improvement with new medications tried by Dr. Schluterman, her neurologist. She has recently tried Botex [sic] injections, which she said were helpful. Different medications have been tried and been unsuccessful, but the medication she is taking now appears to be helping; the claimant reported improvement via decreasing frequency of headaches. The claimant has not consistently sought out emergency treatment at a frequency commensurate with the amount of impairment alleged. The claimant's use of medications does not suggest the presence of an impairment which is more limiting than found in this decision. The medical evidence does not document nor suggest disabling functional limitations stemming from the claimant's headaches. The fact that she may have some level of discomfort was given due consideration in reaching the finding that she would be limited to the residual functional capacity as described above.

(Tr. 911).

The ALJ also addressed the opinion evidence. In pertinent part, the ALJ found the February 2019 opinion of Dr. Robert Cowherd ("Cowherd") somewhat persuasive. Cowherd opined Adcock's migraines would not interfere with her ability to work. In contrast, the ALJ found the opinion of APRN Stephanie Thompson ("Thompson") unpersuasive. Thompson opined in April 2020 that Adcock could not perform basic work activities, and that she would miss more than four days a month due to numerous migraines.

The ALJ explained his RFC restrictions. Adcock's neck pain was addressed by the limitation on overhead reaching. The remaining restrictions – lighting, loud noises, irritants, and vibrations – were provided to avoid triggering of migraine headaches. Relying upon Hawkins' testimony, the ALJ concluded Adcock could perform her past relevant work as an engraver. Accordingly, the ALJ determined Adcock was not disabled. (Tr. 895-918).

*The ALJ failed to properly account for her migraine headaches*

The ALJ found Adcock's migraine headaches to be a severe impairment. The RFC echoes the presence of and vulnerability to migraines, containing four limitations tied to the triggering of migraines (avoidance of lights, noises, irritants, and vibrations). Substantial evidence, however, does not suggest that these limitations adequately account for Adcock's headache impairment. The ALJ did not address whether the RFC limitations will result in her being free from headaches to the point where she will not be absent from work.

His citation of recent improvement with Ubrelvy does not settle the matter. Adcock testified to improvement with Ubrelvy, but stated that the drug usually took four hours to be effective. The treatment records from treating neurologist Keith Schluterman ("Schluterman") paints a mixed picture regarding the Ubrelvy. First prescribed in September 2021, Schluterman recorded the drug was "tolerated and

9

helpful" when he saw Adcock in February 2022. (Tr. 2776, 2379). The drug was no cure, however, as Adcock continued to have more than 15 headaches a month.[4] Schluterman's notes reflect a history of searching for an effective medication(s) for the migraines. Medications/procedures which were tried or considered included Aimovig, Nortriptyline, Botox, Vyepti, Topiramate, occipital nerve blocks, trigger point injections, Propranolol, Rizatriptan, Nurtec, Sumatriptan, and Hydrocodone. In May 2022, just prior to the administrative hearing, Schluterman continued to seek a combination of effective medications – he discontinued Aimovig and added Emgality. At that time, Adcock's prescriptions were Depakote, Emgality, Rizatriptan, and Ubrelvy. She reported the Ubrelvy was "working well." decreasing her headaches to 20 a month, with only half of those being "full blown migraines." (Tr. 2386). The overall picture, despite some improvement in the months prior to the hearing, was not settled.

---

[4] Adcock kept headache logs. From April 2020 through February 2022 these reflect her rating of the frequency and intensity of the headaches. E.g., in April 2020, Adcock recorded there were only ten days when she had no headaches, and six days when she experienced severe headaches. She listed mild and moderate headaches on the days when she was not experiencing severe problems. (Tr. 1395). In September 2020, she listed ten days without headaches, with several severe headaches. (Tr. 1126). November 2020 showed seven non-headache days and seven severe days. (Tr. 1228). May 2021 was better, with fifteen non-headache days, and four severe headaches. (Tr. 2260). This trend did not continue – in August 2021, Adcock indicated she had ten days without headaches, and four days with severe headaches. (Tr. 2302). In February 2022, Adcock recorded twelve days without headaches and five severe headaches. (Tr. 2305).

Substantial evidence did not support the ALJ's evaluation of Adcock's migraines. Specifically, the frequency of the headaches, the duration of the headaches and recovery time required, and the effect of the headaches on absenteeism should have been explored more fully. The ALJ noted Adcock did not seek emergency treatment for her headaches as a factor in his decision. This is not persuasive. Adcock detailed to Schluterman a forty hear history of dealing with the headaches, which included emergency room visits when she was younger (in her thirties). (Tr. 2148). Aware of the emergency room option and armed with a variety of abortive prescriptions to counter the onset of the migraines, Adcock should not have been faulted for dealing with the headaches as she did.

Because the ALJ's evaluation of Adcock's migraines is not supported by substantial evidence, the case must be remanded. On remand, the ALJ should more thoroughly consider the current status of her migraines, and how the migraines may affect the RFC, including the effect on Adcock's ability to perform work duties and the possible effect of absenteeism.

The Commissioner's final decision is reversed, and the case is remanded. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 31st day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE